IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-02323-CMA-MJW

DAWANE ARTHUR MALLETT,

Plaintiff,

v.

J. MUNOZ, *Correctional Officer*,

Defendant.

---

**REPORT & RECOMMENDATION ON DEFENDANT'S MOTION FOR SANCTIONS**
**(Docket No. 46)**

**and**

**REPORT & RECOMMENDATION ON IMPOSITION OF FILING RESTRICTIONS**
**(*sua sponte*)**

---

**Michael J. Watanabe**
**United States Magistrate Judge**

This matter is before the Court on Defendant's motion for sanctions, referred by District Judge Christine M. Arguello (Docket Nos. 46 & 47), as well as on Judge Arguello's general order of reference for pretrial management (Docket No. 9).

The Court has considered the various filings from the parties; taken judicial notice of the Court's entire judicial file in this case and in Plaintiff's many other cases in this District; and considered the applicable Federal Rules of Civil Procedure, statutes, and case law.  Now being fully informed, the Court makes the following report and recommendation.

## Plaintiff's Litigation History in This District

A quick review of the court's CM-ECF electronic docket shows that Plaintiff has appeared in twenty-six lawsuits in this District since 2009.  Of these twenty-six cases, only six have been drawn to a district judge for actual litigation.  The other twenty were summarily dismissed under 28 U.S.C. § 1915(a) or § 1915A.  Of the six that were drawn to district judges for regular litigation, three have since concluded; the remaining three are pending before District Judge Arguello and myself.  I will offer a quick overview of each of the twenty-six cases.

1.    Case No. 09-cv-00278

Plaintiff's first-docketed case was a *Bivens* action actually filed by other inmates—Luke Preacher and David Baxter—challenging the conditions at U.S. Penitentiary Florence ADMAX ("Supermax") under due process, deliberate indifference, and civil RICO theories.  The case was characterized by an enormous amount of forged, fraudulent, and conspiracist filings.  *See Preacher v. Wiley*, 2010 WL 1753324, at *7 & nn.10-25 (D. Colo. Apr. 29, 2010).  But Plaintiff did not partake in those filings, having been part of the case for only two months.  Plaintiff joined via the Third Amended Prisoner Complaint, in August 2009; he participated actively, filing a motion for sanctions against the government, and a response to the government's motion for summary judgment; but he abruptly moved to be voluntarily dismissed from the case under Rule 41(a) in October 2009.

2.    Case No. 09-cv-01784

Plaintiff's second-docketed case was a habeas action filed in July 2009.  It challenged his transfer to Supermax under a procedural due process theory, and it

challenged the conditions at Supermax under a deliberate-indifference theory.  Plaintiff never managed to comply with the procedural requirements for *in forma pauperis* ("*ifp*") status—*i.e.*, certified copies of his inmate account balance—despite several court orders advising him of how to do so.  The case was thus dismissed in September 2009 under 28 U.S.C. § 1915(a).

3. Case No. 09-cv-01823

Plaintiff's third-docketed case was a writ of mandamus filed in August 2009.  It challenged Plaintiff's transfer to Supermax, asked for a psychiatric evaluation, and requested transfer to a facility designed for the mentally ill.  It also asked the court to initiate criminal proceedings against a facility manager for denying inmates food and water.  Next, it requested that the court order blood tests to establish that Plaintiff and other inmates were being poisoned by the prison staff, and to initiate criminal charges against said staff.  A variety of other claims were presented as well.  The case was dismissed in September 2009 under 28 U.S.C. § 1915(a), again for failure to provide a proper *ifp* application.

4. Case No. 09-cv-02149

Plaintiff's fourth-filed case was also a writ of mandamus, filed a few weeks before the previous writ of mandamus was dismissed.  It alleged that Supermax kept him in unhygienic facilities with feces on the walls; denied him food, clothing, and showers; and subjected him to racist verbal abuse.  As with the previous writ, it asked that the court instigate criminal proceedings against defendant correctional officers; as with the previous writ, it was dismissed under 28 U.S.C. § 1915(a) for failure to provide a proper *ifp* application.

4

    5.    <u>Case No. 09-cv-02448</u>

Plaintiff's fifth-docketed case was a habeas action transferred to this District from the Eastern District of Texas.  It challenged Plaintiff's confinement, arguing that an earlier habeas case (filed in that district under 28 U.S.C. § 2255) remained pending after two years and the undue delay constituted a due process violation.  It also raised a number of Sixth Amendment arguments challenging his conviction.  The petition was filed in Texas in July 2009, and transferred to this Court (as the district of confinement) in October 2009; in December 2009, the case was dismissed under 28 U.S.C. § 1915(a) for failure to provide a proper *ifp* application.

    6.    <u>Case No. 09-cv-02888</u>

Plaintiff's sixth-docketed case was a *Bivens* action, filed in December 2009, again challenging his transfer to ADX under a procedural due process theory and alleging equal-protection violations in use of the special housing unit ("SHU").  In January 2010, the case was dismissed under 28 U.S.C. § 1915(a) for failure to provide a proper *ifp* application.

    7.    <u>Case No. 09-cv-03012</u>

Plaintiff's seventh-docketed case was a habeas action challenging his conviction on various purported Fifth Amendment and Sixth Amendment theories; in this case, *ifp* status was granted, but in February 2010 the petition was nonetheless dismissed because the proper vehicle for challenging Plaintiff's conviction was the 28 U.S.C. § 2255 petition that Plaintiff filed in the Eastern District of Texas.  *See Mallett v. Davis*, 2010 WL 452121 (D. Colo. Feb. 8, 2010).

8.     Case No. 09-cv-03013

Plaintiff's eight-docketed case was filed the same day in December 2009 as his seventh-docketed case.  It, too, was a habeas case; this one, however, challenged Plaintiff's confinement rather than his conviction.  As with most of Plaintiff's 2009 cases, it challenged Plaintiff's transfer to ADX on a procedural due process theory, and it challenged the use of the SHU at Supermax on a deliberate indifference theory. Plaintiff was granted *ifp* status.  Nonetheless, his case was dismissed in April 2010 for failure to exhaust administrative remedies.  *See Mallett v. Davis*, 2010 WL 1641211 (D. Colo. Apr. 21, 2010).

9.     Case No. 10-cv-00085

Plaintiff's ninth-docketed case was his longest-lived case to date, making it from a January 2010 filing to a December 2010 judgment on the merits.  It too was a habeas case.  The initial application repeated some claims from Plaintiff's earlier petitions, and those claims were summarily dismissed as duplicative in March 2010 (before the earlier petition, Case No. 09-cv-03013, was dismissed for failure to exhaust).  One claim went forward on the merits, however—a claim that Supermax was creating an illegal program by segregating certain inmates into more restrictive conditions.  Defendants and Chief Judge Krieger interpreted this as a challenge to the facility's step-down program, a program that allows prisoners to ease into less restrictive populations (and ultimately out of Supermax) over time based on good behavior.  So construed, the case was dismissed as a challenge to conditions of confinement (which must be brought as a *Bivens* action) rather than in the execution of a sentence (a habeas claim).  *See Mallett v. Davis*, 2010 WL 5056201 (D. Colo. Dec. 6, 2010).

It should be noted that, up to this point, few of Plaintiff's filings throughout these cases were facially frivolous.  Plaintiff might be faulted for filing too many cases with too little patience, but the dismissals reflect nothing more than a pro se litigant's failure to figure out the rules of prison litigation.  That changed here, in Plaintiff's ninth-docketed case.  Here, Plaintiff filed a "reply" to Defendant's argument on the merits—in which Plaintiff simply wrote "Uniform Commercial Code 28-3-503 – Notice of Dishonor" on top of the government's argument and returned it to the Court.  He also filed a one-page affidavit attesting that Congress never authorized the step-down program.  *See id.*, 2010 WL 5056201 at *2 n.3.  The Uniform Commercial Code's provisions, of course, are a frequent subject of frivolous and conspiracist legal filings.  *See, e.g.*, *Amerson v. United States*, 550 F. App'x 603 (10th Cir. 2013); *United States v. Goode*, 483 F.3d 676 (10th Cir. 2007).  Plaintiff's dismissal was for a non-frivolous reason—he simply identified the wrong cause of action for addressing his alleged injuries, as many pro se litigants do.  But nonetheless, Plaintiff began a pattern of filing frivolous documents in this case.

10.  Case No. 10-cv-00321

Plaintiff's tenth-docketed case, in February 2010, was a *Bivens* action again challenging his transfer to Supermax on a procedural due process theory and again alleging equal protection violations in Supermax's use of the SHU.  Plaintiff contended that, as a "flesh and blood man" he could not be liable under the Uniform Commercial Code for court fees in a "corporate" case, apparently applying a straw-man conspiracist theory.  *See, e.g.*, *Monroe v. Beard*, 536 F.3d 198, 203 n.3 (3d Cir. 2008).  Nonetheless, a certified copy of his inmate account was provided and *ifp* status granted.

After granting *ifp* status, however, the court ordered Plaintiff (pursuant to summary review under 28 U.S.C. § 1915A) to amend his complaint to allege personal involvement by the named individual-capacity defendants. Plaintiff never filed an amended complaint, and in May 2010 the case was summarily dismissed under 28 U.S.C. § 1915A for failing to state a claim.

11.   Case No. 10-cv-01228

Plaintiff's eleventh-docketed case, in May 2010, was a habeas petition and, again, Plaintiff successfully gained *ifp* status. The petition asserted that the prison was obstructing Plaintiff's access to legal process and administrative-grievance procedures, that his transfer to Supermax violated procedural due process, and that various prison conditions (including the facility's use of the SHU) also violated various constitutional rights. Despite repeated references to constitutional rights, Plaintiff explicitly premised his claims on "The Moroccan Treaty of 1787" (and also the Declaration of Independence of 1776). The Moroccan Treaty reference is another frivolous iteration of common conspiracy theories. *See, e.g.*, *Al Ameen Bey v. Stumpf*, 825 F. Supp. 2d 537 (D. N.J. 2011); *Blake-Bey v. Cook County, Ill.*, 438 F. App'x 522 (7th Cir. 2011). Because the case appeared to raise *Bivens*-type issues related to the conditions of Plaintiff's confinement, rather than habeas-type issues related to the execution of Plaintiff's sentence, the Court ordered Plaintiff to file an amended complaint clarifying his legal claims. Plaintiff did so. And this time, he identified himself as "Master and Commander of Moorish Vessel Dawane Arthur Mallet, Sui Juris, Non-Public Citizen of America." The amended petition was rife with references to both the Uniform Commercial Code and the allegedly unique legal status of Moroccan Americans. The Court dismissed the

case under 28 U.S.C. § 1915A as patently frivolous.  *See Mallett v. Davis*, 2010 WL

3086327 (D. Colo. Aug. 5, 2010).

    12.   <u>Case No. 10-cv-02194</u>

    Plaintiff's twelfth-docketed case was filed in September 2010; it was a habeas

action, challenging both Plaintiff's conviction and his transfer to Supermax.  The court

construed it as a challenge to the conditions of confinement (appropriately brought as a

*Bivens* action), and ordered Plaintiff to file an amended complaint.  Plaintiff did not do

so, and in December 2010 the case was dismissed for failure to state a claim under 28

U.S.C. § 1915A.

    13.   <u>Case No. 11-cv-01256</u>

    Plaintiff's thirteenth-docketed case came after a brief respite—all of his earlier

cases had been dismissed no later than December 2010, and this one was not filed until

May 2011.  However, this case does not mark a move toward a more constructive

direction for Plaintiff's litigation efforts.  It was a writ of mandamus; Plaintiff alleged that

he had returned all of his disciplinary citations to the prison as dishonored under the

Uniform Commercial Code, and the prison nonetheless treated the citations as if they

were valid.  He alleged that the resulting disciplinary actions violated procedural due

process.  The Court ordered him to file an amended complaint; he did so, this time

arguing that the disciplining officer had no authority because the officer was a citizen of

Kansas (not Colorado).  Plaintiff was granted *ifp* status, and the case was summarily

dismissed in June 2011 as frivolous under 28 U.S.C. § 1915A.  Plaintiff appealed to the

Tenth Circuit, but the appeal was dismissed because he neither paid the filing fee nor

applied for leave to proceed *ifp* on appeal.

9

14.    Case No. 11-cv-01567

Plaintiff's fourteenth-docketed case was filed a couple weeks before the previous

case was dismissed, in June 2011.  It was brought as a habeas case, challenging the

conditions at Supermax and its treatment of mentally ill inmates.  The Court again

ordered him to file an amended pleading to bring the claim under *Bivens* instead of as a

habeas action; it also ordered him to file a proper *ifp* application.  Plaintiff did not do

either, and the case was dismissed under 28 U.S.C. § 1915(a) in July 2011.  Plaintiff

appealed to the Tenth Circuit, but the appeal was dismissed because he neither paid

the filing fee nor applied for leave to proceed *ifp* on appeal.

15.    Case No. 11-cv-02627

Another few months passed, and then Plaintiff's fifteenth-docketed case was

filed—in October 2011.  This was, again, a habeas petition.  It alleged that Plaintiff is

Jewish, and that his conviction was improper because his religious beliefs prohibited

him from being tried in a heathen tribunal.  Although the habeas petition challenged

Plaintiff's conviction, the Court viewed it as a *Bivens*-type action and ordered Plaintiff to

file an amended pleading.  No amended pleading was filed, and in November 2011 the

case was dismissed for failure to state a claim under 28 U.S.C. § 1915A.

16.    Case No. 13-cv-00600

Plaintiff took 2012 off from litigation.  His sixteenth-docketed case came in March

2013; an inmate named Lamarcus Lee Hillard[1] was co-plaintiff.  The complaint alleges

that Supermax's conditions constitute torture; the gravamen of the complaint seems to

---

[1] Mr. Hillard will appear more than once in this report and recommendation.  Although
the government's filings suggest that Mr. Hillard is indeed an inmate at Supermax, all
documents filed on his behalf (throughout all of Plaintiff's cases) seem to bear Plaintiff's
handwriting.

be that the torture is effected through the surreptitious placement of asbestos in various places throughout the prison, such as in the cracks in the walls and in the kitchen appliances.  The complaint also alleges improper mail restrictions and inadequate access to exercise equipment.  Although the complaint identifies plaintiffs as Moorish Americans and warns the court to "proceed with the knowledge at El Elyon-Majestas has spoken," it otherwise refrains from conspiracist arguments.  That said, plaintiffs also (for some reason) filed a notice of removal under 28 U.S.C. § 1441, and a notice that the Clerk of Court of the Court of International Trade was ordered to issue all necessary writs, in camera.  The Court ordered plaintiffs to file proper *ifp* applications—which they did not do, leading the Court to dismiss the case under 28 U.S.C. § 1915(a) in April 2013.

17.   Case No. 13-cv-02273

Plaintiff's seventeenth-docketed case, again with Mr. Hillard as co-plaintiff, was filed in September 2013—and it marks a new milestone for Plaintiff, as it ventures whole-heartedly into the realm of the patently frivolous.  Claim One, for example, is titled "Violation of 1st Amendment Right to the Freedom of Speech[:] Ongoing Acts of Cosmic Treason Interfering With Confidential Mail of a Foreign State in Violation of Peculiar International Law."  While interference with an inmate's personal mail can, at times, amount to a First Amendment violation, this complaint frames the issue as one of interference with a plaintiffs' rights as citizens of individual sovereign entities under international law.  The Court ordered plaintiffs to file proper *ifp* applications—which they did not do, leading the Court to dismiss the case under 28 U.S.C. § 1915(a) in October 2013.

18.   <u>Case No. 13-cv-02484</u>

Plaintiff's eighteenth-docketed case, filed in September 2013, was a return to the

habeas form of action.  It alleged that various disciplinary actions taken against Plaintiff

violated procedural due process because he was not afforded a mental-health

evaluation before imposition of penalties; that the prison's mental-health treatment

programs were inadequate; and that the prison obstructed his attempts to use the

administrative-grievance process.  The Court dismissed the claims insofar as they

challenged prison conditions as *Bivens*-type actions improperly brought in a habeas

case; it then dismissed the claims insofar as they challenged the disciplinary actions for

failure to exhaust administrative remedies (after noting that, despite allegations that the

grievance system was unavailable to Plaintiff, prison records showed well over 200

grievances filed by Plaintiff during his incarceration).   The case was dismissed in

November 2013.

19.   <u>Case No. 13-cv-02676</u>

Plaintiff's nineteenth-docketed case survived for eight months, being filed in

October 2013 and dismissed in June 2014.  The complaint was brought under *Bivens*,

and alleged that prison officials denied Plaintiff food for 30 days, in retaliation for his

grievance and litigation conduct.  It also alleged that the prison failed to investigate his

claims and was obstructing his access to administrative grievances and legal process.

Later, Plaintiff filed an amended complaint alleging physical and sexual abuse by prison

guards.  Plaintiff failed to appear for scheduled hearings, failed to comply with court

orders, and failed to prosecute the case; the case was thus dismissed under Fed. R.

Civ. P. 16(f) and 41(b).

During the pendency of the case, Plaintiff filed a "Suggestion of Death Upon the Record Under Fed.R.Civ.P 25(a)(1).  It stated that Dawane Arthur Mallett was the personal representative of the deceased DAWANE ARTHUR MALLETT, who "was nailed to the cross with Christ Jesus and the flesh and blood man died and I the spirit of God was resurrected with Christ Jesus, therefore I Dawane Arthur Mallett walk now in the spirit of Christ Jesus and my father Allag bare witness to this death and resurrection."  This document is obviously frivolous, continues Plaintiff's apparent belief in straw-man conspiracy theories, and marks the first—but not last—time Plaintiff filed a "suggestion of death" under Rule 25(a).

20.   Case No. 13-cv-02899

Plaintiff's twentieth-docketed case was filed in October 2013 and was brought under *Bivens*.  The complaint contained long, rambling allegations of various hostilities and abuses against Plaintiff, and alleged violations under the Eighth Amendment and First Amendment.  The court ordered Plaintiff to file an amended complaint complying with Fed. R. Civ. P. 8(a)'s requirement of a "short and plain statement of the claim."  Plaintiff did not do so, and in February 2014 the complaint was dismissed under 28 U.S.C. § 1915A for failure to state a claim.

21.   Case No. 14-cv-00334

Plaintiff's twenty-first-docketed case, filed in February 2014, was also short lived.  It was an application for a writ of mandamus, alleging that Plaintiff's legal papers and personal property had been confiscated and that certain guards had physically and sexually assaulted him.  The Court ordered Plaintiff to file a proper *ifp* application—

which he did not do, leading the Court to dismiss the case under 28 U.S.C. § 1915(a) in March 2014.

22.   Case No. 14-cv-02198

Plaintiff's twenty-second-docketed case was filed in August 2014 and is, at this time, still open and pending before District Judge Arguello and myself.  The complaint is brought under *Bivens*, alleging sexual and physical assaults, interference with legal mail, and interference with the administrative-grievance process.  Reviewing the complaint under 28 U.S.C. § 1915A, the Court dismissed all of his claims except those alleging assault by a specific Defendant.

In January 2015, Plaintiff filed a motion for entry of default under Fed.R.Civ.P. 55(a).  In Plaintiff's motion, he invoked his "diplomatic status" as a Moorish American National.  He also included a purported "true bill" declaration on behalf of each defendant—confessing liability and default, and attesting that Plaintiff should be released from prison and paid millions in damages.  The clerk declined to enter default because no proof of service had been filed as to the one remaining Defendant.

23.   Case No. 14-cv-02323

Plaintiff's twenty-third-docketed case is the instant case, currently pending before District Judge Arguello and myself, and it will be discussed at length below.

24.   Case No. 14-cv-02589

Plaintiff's twenty-fourth-docketed case was filed in August 2014 in the U.S. District Court for the District of Columbia and transferred to this District in September 2014.  It was brought under 42 U.S.C. § 1983, and again alleged physical and sexual assaults, as well as break-downs in the administrative-grievance process and refusals

by the prisons to investigate his claims.  The Court ordered Plaintiff to file a proper *ifp*

application—which he did not do, leading the Court to dismiss the case under 28 U.S.C.

§ 1915(a) in October 2014.

      25.   <u>Case No. 14-cv-03308</u>

      Plaintiff's twenty-fifth-docketed case was filed in December 2014.  It was brought

as a habeas action, alleging that Plaintiff's conviction and confinement violate various

international treaties.  Plaintiff attached to his amended petition a purported declaration

by defendants, titled "Judgment by Nihil Dicit," confessing various assaults on Plaintiff,

attesting to Plaintiff's immunity under international law as a Moorish citizen and heir of

King David, and admitting to substantial monetary liabilities.  The document references

Uniform Commercial Code financing statements, of course, and purports to establish a

judgment in Plaintiff's favor of $36,000,000,000,000.00 (thirty-six trillion), with interest

compounding at 30%.  The Court viewed the petition as a challenge to Plaintiff's

conviction, over which this District (not being the district of conviction) has no jurisdiction

under 28 U.S.C. § 2255.  Exercising summary review under 28 U.S.C. § 1915A, the

Court dismissed the case in March 2015.

      26.   <u>Case No. 14-cv-03363</u>

      Plaintiff's twenty-sixth-docketed case—his most recent, for now—was also filed

in December 2014, and it remains pending before District Judge Arguello and myself.  It

is brought under *Bivens* and also 42 U.S.C. § 1983; it alleges physical assaults and

threats by prison staff.  It includes a purported declaration by Defendants, titled

"Judgment by Nihil Dicit," that substantially matches the one filed in Plaintiff's previous

case—except that there it was 13 pages long, and here it is 33 pages long.

## Defendant's Motion for Rule 11 Sanctions

### *Background*

This case, Case No. 14-cv-02323, is impressive.  It was filed in August 2014,

bringing claims under *Bivens*.  It alleges, as so many of Plaintiff's complaints have, that

the prison is obstructing Plaintiff's legal mail, and that the individual defendants are

tampering with Plaintiff's food and physically assaulting him.  (Docket No. 1.)  On

summary review under 28 U.S.C. § 1915A, the Court dismissed the legal-mail claims

but allowed the deliberate-indifference claims to proceed to regular litigation.  (Docket

No. 8.)

The complaint includes a 27-page version of Plaintiff's "Judgment by Nihil Dicit"

declaration on behalf of Defendants.  (Docket No. 1.)

Plaintiff filed two motions for emergency restraining orders, which the court

denied.  (Docket Nos. 14, 20, 24, 31.)

Plaintiff also filed a motion for clerk's entry of default under Fed.R.Civ.P. 55(a).

(Docket No. 28.)  The motion was based on a 70-page "financing statement" attached to

the motion and the 27-page "private security agreement" attached to the complaint.  (*Id.*

p.1.)  The seventy-page exhibit attached to the motion is a Uniform Commercial Code

Financing Statement (Form UCC1), along with an extended declaration "Under the

Master Sign of (7) in the Mystic Tribe of Ancient Hiram-Aliff."  The declaration purports

to include testimony from various defendants, most of the judges of this Court, and,

also, various individuals in public life (Barack Obama, Susan Rice, Lois Lerner, Jamie

Dimon, Jay Carney, etc.), attesting to a $69 trillion liability to Plaintiff.  It also purports to

establish Plaintiff's legal title to most of the land in the Western Hemisphere.  The Clerk

of Court declined to enter default based on lack of proof of service.  (Docket No. 30.)

On February 5, 2015, Plaintiff filed a "Suggestion of Death Upon the Record

Under Fed. R. Civ. P. 25(a)(1)."  (Docket No. 36.)  The notice purported to establish (1)

that the remaining Defendant, J. Munoz, died of a drug overdose and died intestate; and

(2) that inmate Lamarcus L. Hillard (Plaintiff's old co-plaintiff from certain 2013 cases)

had been appointed by a court as personal representative of Defendant's estate.  The

notice also included a purported settlement agreement wherein Mr. Hillard, acting as

personal representative of Defendant's estate, made a Rule 68 offer of settlement for

$9,999,000—to be paid to Plaintiff by the United States of America.  The purported

settlement agreement included various provisions under the Uniform Commercial Code

to perfect Plaintiff's right to the money.  In the absence of timely payment, Mr. Hillard

(speaking for Defendant Munoz and on behalf of the United States of America) agreed

to entry of default in Plaintiff's favor for $36 trillion with 30% interest compounding

monthly.

A week later, Plaintiff filed formal notice of acceptance of the offer of settlement.

(Docket No. 38.)  Later that month, Plaintiff moved to have Mr. Hillard formally

substituted for Defendant Munoz.  (Docket No. 41.)  Defendant Munoz promptly filed an

affidavit attesting that he is not deceased and has not authorized Mr. Hillard to act on

his behalf in any manner.  (Docket No. 43.)

On March 10, 2015, Defendant Munoz filed a motion for sanctions under Fed. R.

Civ. P. 11.  The Court ordered Plaintiff to file a response on or before April 10, 2015; as

of the date of this Report & Recommendation, no response has been received.  The

Court set the motion for hearing on April 30, 2015, at 2:30 p.m.  At the appointed time, no appearance was made on behalf of Plaintiff.  Senior Officer Matthew Palider, from U.S. Penitentiary Florence ADMAX, appeared telephonically and reported that, although he had established a telephone line for Plaintiff to appear, Plaintiff was refusing to participate.  Officer Palider further represented that he had spoken with Plaintiff three times over the course of the day (April 30, 2015), and each time Plaintiff indicated that he did not wish to participate in the hearing.  Counsel for defendant appeared and argued that (1) Plaintiff had confessed the motion, (2) Plaintiff had not withdrawn the objectionable filings, and (3) the objectionable filings are false, fraudulent, and harassing.

Defendant's motion for sanctions argues that the suggestion of death, Rule 68 offer and acceptance, motion for substitution, and the judgment nihil dicit attached to the complaint all constitute false statements of fact and efforts to defraud the Court. Defendant argues that, as a sanction, the case should be dismissed, or Plaintiff's *ifp* status revoked, or (at a minimum) the fraudulent documents stricken from the record.

### Legal Standards

Federal Rule of Civil Procedure 11 provides:

**Rule 11. Signing Pleadings, Motions, and Other Papers; Representations to the Court; Sanctions**

**(a) Signature.**  Every pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name—or by a party personally if the party is unrepresented.  The paper must state the signer's address, e-mail address, and telephone number.  Unless a rule or statute specifically states otherwise, a pleading need not be verified or accompanied by an affidavit.  The court must strike an unsigned paper unless the omission is promptly corrected after being called to the attorney's or party's attention.

**(b) Representations to the Court.** By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

> **(1)** it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> **(2)** the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> **(3)** the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> **(4)** the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

**(c) Sanctions.**

> **(1) *In General.*** If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation. Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee.
>
> **(2) *Motion for Sanctions.*** A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets. If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion.
>
> **(3) *On the Court's Initiative.*** On its own, the court may order an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b).

> **(4)** *Nature of a Sanction.*  A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated.  The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation.
>
> **(5)** *Limitations on Monetary Sanctions.*  The court must not impose a monetary sanction:
>
>> **(A)** against a represented party for violating Rule 11(b)(2); or
>>
>> **(B)** on its own, unless it issued the show-cause order under Rule 11(c)(3) before voluntary dismissal or settlement of the claims made by or against the party that is, or whose attorneys are, to be sanctioned.
>
> **(6)** *Requirements for an Order.*  An order imposing a sanction must describe the sanctioned conduct and explain the basis for the sanction.

Fed. R. Civ. P. 11.  "Rule 11 sanctions serve to punish a knowing filing of a false and misleading pleading.  It ensures that an attorney observes his duty as an officer of the court, as well as an advocate for his client." *Coffey v. Healthtrust, Inc.*, 1 F.3d 1101, 1104 (10th Cir. 1993).  "Rule 11 requires that the pleading be, to the best of the signer's knowledge, well grounded in fact, warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose." *Id.*

In the Tenth Circuit, the *Ehrenhaus* factors apply to Rule 11 sanctions.  *Mobley v. McCormick,* 40 F.3d 337, 340–41 (10th Cir.1994) ("[W]e see no principled distinction between sanctions imposed for discovery violations and sanctions imposed for noncompliance with other orders [and] ... involuntary dismissals should be determined by reference to the *Ehrenhaus* criteria.").  In *Ehrenhaus,* the Tenth Circuit identified

factors to be considered when evaluating grounds for dismissal of an action: "(1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; ... (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions." *Ehrenhaus v. Reynolds,* 965 F.2d 916, 921 (10th Cir.1992) (citation omitted).  "[D]ismissal is warranted when 'the aggravating factors outweigh the judicial system's strong predisposition to resolve cases on their merits.'" *Ecclesiastes 9:10–11–12, Inc. v. LMC Holding Co.,* 497 F.3d 1135, 1144 (10th Cir.2007) (quoting *Ehrenhaus,* 965 F.2d at 921).  The Court's "discretion to choose a sanction is limited in that the chosen sanction must be both 'just' and 'related to the particular claim'" at issue.  *Ehrenhaus*, 965 F.2d at 920–21.

### *Discussion*

There is little doubt that Plaintiff's conduct in this case—and in several other cases in this district—violates Rule 11(b).  Plaintiff's filings are legally frivolous; his reliance on the Uniform Commercial Code, on Moorish American theories, and on "straw man" or "sovereign citizen" theories have all been rejected by every court in the land.  Further, over the course of twenty-six cases in this District, Plaintiff has been informed more than once of the frivolousness of his legal positions.  And moreover, this case involves egregious factual misrepresentations.  Plaintiff's efforts to persuade the Court that Defendant Munoz passed away and appointed a federal inmate as his personal representative are obviously sanctionable conduct.

21

Despite timely service of Defendant's motion (Docket No. 46-1) and an order from this Court compelling a response to Defendant's motion (Docket No. 48), Plaintiff has made no effort to defend his conduct.  Sanctions are appropriate.

Weighing the *Ehrenhaus* factors, the Court finds that this case must be dismissed with prejudice.  Every factor points in that direction.  The burden on defendant, of dealing with copious, prolix, frivolous nonsense and fraudulent filings, is substantial.  The interference with the judicial process is appreciable. Plaintiff's culpability is extreme.  Plaintiff has been given notice, via the many other cases that have been dismissed for similar conduct.  And finally, it is patently obvious that no lesser sanction will deter Plaintiff's conduct.  The Court thus recommends that (1) Defendant's motion for Rule 11 sanctions be GRANTED, and (2) Plaintiff's case be DISMISSED with prejudice under Rule 11 and *Ehrenhaus*.

## Enjoining Further Litigation

The Court further recommends that Plaintiff be enjoined from further litigation absent compliance with specified filing restrictions.

As the Tenth Circuit recently explained:

> "Federal courts have the inherent power to regulate the activities of abusive litigants by imposing carefully tailored restrictions in appropriate circumstances."  *Ysais v. Richardson,* 603 F.3d 1175, 1180 (10th Cir.2010); *accord Chambers v. NASCO, Inc.,* 501 U.S. 32, 44–45(1991). Filing restrictions "are appropriate where the litigant's lengthy and abusive history is set forth; the court provides guidelines as to what the litigant may do to obtain its permission to file an action; and the litigant receives notice and an opportunity to oppose the court's order before it is implemented." *Andrews v. Heaton,* 483 F.3d 1070, 1077 (10th Cir.2007).

*Pinson v. Berkebile*, ___ F. App'x ___, 2015 WL 408211, at *4 (10th Cir. Feb. 2, 2015).

Plaintiff's lengthy and abusive litigation history has been set forth, *supra*.  This report

and recommendation provides notice to him, and he may object to the imposition of

filing restrictions by filing timely objections to this report and recommendation under

Fed. R. Civ. P. 72.

As for guidelines, the Court recommends that Plaintiff be given leave to file a

complaint only upon the following conditions, modeled after those set forth in *Pinson v.*

*Kasdon*, Case No. 13-cv-01384-RM-BNB, 2014 WL 1715133, at *5–6 (D. Colo. May 1,

2014), *endorsed by Pinson v. Berkebile*, ___ F. App'x ___, 2015 WL 408211, at *4 (10th

Cir. Feb. 2, 2015):

1. Mr. Mallett shall not file in this Court any new civil actions which challenge disciplinary proceedings or attempt to raise claims regarding conditions of confinement, unless represented by a licensed attorney admitted to practice in the District of Colorado or unless he has obtained permission from the court to proceed *pro se*. This includes actions where Mr. Mallett is proceeding as a co-plaintiff or a co-applicant.

In order to obtain permission to proceed *pro se*, Mr. Mallett must:

a. File with the Clerk of the Court a motion titled "Motion Pursuant to Court Order Seeking Leave to File a *Pro Se* Action" requesting leave to file a *pro se* case;

b. Attach to the motion a copy of this Order or a separate statement that Mr. Mallett is subject to filing restrictions which references this Order by caption and case number;

c. Attach to the motion a list of all lawsuits currently pending in this Court or in any other federal or state court in which Mr. Mallett is a party, including the case name and number, and a description of the claims asserted and relief being sought in each case;

d. Identify in the motion the legal issues raised in the new case; whether the issues have been raised in other proceedings in this Court or any other court; and, if so, the case number and docket number where the issues were raised;

e. Include in the motion a statement advising the Court whether any defendant to the lawsuit was a party to, or was in any way involved in, any prior lawsuit involving Plaintiff and, if so, in what capacity;

      f. Attach to the motion a declaration complying with 28 U.S.C. § 1746 which states that the legal arguments being raised are not frivolous or made in bad faith; are warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and

      g. Attach to the motion a copy of the complaint or application sought to be filed which must comply with the Federal Rules of Civil Procedure and the Local Rules of this Court.

      2. Mr. Mallett shall not file any motions or other papers pertaining to the motion or the complaint or application until the Motion for Leave is decided, unless directed to do so by the Court.

      3. Absent an imminent threat of serious bodily injury, Mr. Mallett shall not have more than one "Motion Pursuant to Court Order Seeking Leave to File a *Pro Se* Action" pending at a time.  In no event, absent an imminent threat of serious bodily injury, shall Mr. Mallett submit more than one motion per month.

      4. The filing restrictions shall not interfere in any way with actions, orders, or judgments of any federal court involving Mr. Mallett which predate the filing restrictions.

The Court has made one change to the foregoing restrictions, compared to those imposed on Jeremy Pinson in *Pinson v. Kasdon*, Case No. 13-cv-01384-RM-BNB, 2014 WL 1715133, at *5–6 (D. Colo. May 1, 2014).  There, the condition in paragraph 1(f) required that Mr. Pinson attest that his claim had not been brought previously in any action.  Here, that condition seems inappropriate, as none of Mr. Mallett's claims have ever been heard on the merits.  Mr. Mallett is entitled to have his claims heard once, if he ever manages to see a case through to a decision on the merits before derailing it with frivolous conduct.

## **Recommendation**

For the foregoing reasons, the Court RECOMMENDS that:

(1)    Defendant's Motion for Sanctions (Docket No. 46) be GRANTED;

(2)    This case be DISMISSED with prejudice under Federal Rule of Civil

Procedure 11(c) and *Ehrenhaus v. Reynolds*, 965 F.2d 916 (10th

Cir.1992); and

(3)    Filing restrictions be imposed on Plaintiff as set forth above.


**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives de novo review of the recommendation by the District Judge, Thomas v. Arn, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. Makin v. Colo. Dep't of Corr., 183 F.3d 1205, 1210 (10th Cir. 1999); Talley v. Hesse, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**


Date:  May 1, 2015                          s/ Michael J. Watanabe
       Denver, Colorado                     Michael J. Watanabe
                                            United States Magistrate Judge